Mark Werksman (State Bar No. 120767)
**WERKSMAN JACKSON & QUINN LLP**
888 West Sixth St., Fourth Floor
Los Angeles, CA 90017
Telephone: (213) 688-0460
Facsimile: (213) 624-1942
Email: mwerksman@werksmanjackson.com

Karen Sosa (State Bar No. 269429)
**LAW OFFICE OF KAREN M. SOSA**
35 N. Lake Ave., Suite 710
Pasadena, CA 91101
Telephone: (213) 255-5459
Email: karen@sosalawpc.com

Attorneys for Defendant
REECE SMITH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br><br> vs. <br><br> REECE BANGURA SMITH, <br><br> *Defendant.* | **CASE NO. 25-CR-00766-JFW** <br><br> **DEFENDANT REECE SMITH'S NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE FROM WARRANTLESS SEARCH AND SEIZURE** |

# TABLE OF CONTENTS

PAGE(S)

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................3

I.    INTRODUCTION ...........................................................................................3

II.   STATEMENT OF FACTS ...............................................................................3

  A.   The Storage Unit Search Warrants ...............................................................3

  B.   Execution of the Storage Unit Warrants and Seizure of Smith's Phone ..........................................................................................................4

  C.   Subsequent Search Warrant for the Cell Phones ...................................5

III.  ARGUMENT ...................................................................................................6

  A.   The June 13 Warrantless Search and Seizure of Mr. Smith and His Property Violated the Fourth Amendment .......................................6

    1.   The Storage Unit Warrants Did Not Authorize the Seizure of Mr. Smith's Phones ............................................................6

    2.   No Exception to the Warrant Requirement Justified the Seizure ......................................................................................7

      a.   The Pat-Down Exception Does Not Apply ......................7

      b.   Consent is Not Established by the Record .......................8

  B.   The Cell Phones Were Impermissibly Detained Pending a Warrant .........................................................................................................9

  C.   All Evidence Obtained Pursuant to the July 26 Warrant Must Be Suppressed ..............................................................................................11

    1.   The July 26 Warrant is Fruit of the Poisonous Tree ................11

    2.   The July 26 Warrant is Not Supported by Probable Cause ......11

    3.   The July 26 Affidavit May Contain Material Misrepresentations Warranting Suppression ...........................14

IV.   CONCLUSION................................................................................................15

i

## TABLE OF CONTENTS

**PAGE(S)**

**EXHIBITS TO THE MOTION TO SUPPRESS**

EXHIBIT A – Search Warrant Trojan Storage Unit 111 dated June 12, 2024 .........3

EXHIBIT B – Search Warrant Trojan Storage Unit 420 dated June 12, 2024 .........3

EXHIBIT C – Report of Investigation 8, documenting the Execution
    of Search Warrants ....................................................................................4

EXHIBIT D – Application for Search Warrant for Defendant's Phones
    dated July 26, 2024....................................................................................4,7

EXHIBIT E – Receipt for Detained Property dated June 13, 2024..........................7

**TABLE OF AUTHORITIES**

**PAGE(S)**

**SUPREME COURT CASES**

*Franks v. Delaware*
          438 U.S. 154 (1978)................................................................14

*Illinois v. Gates*
          462 U.S. 213 (1983)................................................................13

*Katz v. United States*
          389 U.S. 347 (1967)..................................................................7

*Minnesota v. Dickerson*
          508 U.S. 366 (1993)..................................................................7

*Riley v. California*
          573 U.S. 373 (2014)................................................................12

*Terry v. Ohio*
          392 U.S. 1 (1968)...................................................................7,9

*Texas v. Brown*
          460 U.S. 730 (1983)................................................................12

*United States v. Place*
          462 U.S. 696 (1983)................................................................6,9

*Wong Sun v. United States*
          371 U.S. 471 (1963)................................................................11

**FEDERAL CASES**

*United States v. Carbajal*
          956 F.2d 924 (9th Cir. 1992) ......................................................6

*United States v. Shaibu*
          920 F.2d 1423 (9th Cir. 1990) ....................................................8

*In re Grand Jury Subpoenas*
          926 F.2d 847 (9th Cir. 1991) ....................................................12

*United States v. Whitney*
          633 F.2d 902 (9th Cir. 1980) ....................................................12

*United States v. Galpin*
          720 F.3d 436 (2d Cir. 2013) .....................................................13

**OTHER SOURCES**

We Are Social, DataReportal & Meltwater, *Most Popular Social Networks Worldwide as of February 2025, by Number of Monthly Active Users*, Statista (Oct. 15, 2025), https://www.statista.com/statistics/272014/global-social-networks-ranked-by-number-of-users/ (last visited Mar. 9, 2026)......................................13

iii

Mark Werksman (State Bar No. 120767)
**WERKSMAN JACKSON & QUINN LLP**
888 West Sixth St., Fourth Floor
Los Angeles, CA 90017
Telephone: (213) 688-0460
Facsimile: (213) 624-1942
Email: mwerksman@werksmanjackson.com

Karen Sosa (State Bar No. 269429)
**LAW OFFICE OF KAREN M. SOSA**
35 N. Lake Ave., Suite 710
Pasadena, CA 91101
Telephone: (213) 255-5459
Email: karen@sosalawpc.com

Attorneys for Defendant
REECE SMITH

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br><br> vs. <br><br> REECE BANGURA SMITH, <br><br> *Defendant.* | **CASE NO. 25-CR-00766-JFW** <br><br> **DEFENDANT REECE SMITH'S NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE FROM WARRANTLESS SEARCH AND SEIZURE** <br><br> **Judge: Hon. John F. Walter** <br> **Date: March 30, 2026** <br> **Time: 8:00a.m.** |

**TO THE HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE, AND ASSISTANT UNITED STATES ATTORNEY BRENDA GALVÁN:**

PLEASE TAKE NOTICE that on March 30, 2026, or as soon thereafter as this matter may be heard, Defendant Reece Smith, through his counsel Mark Werksman, will move the Court to suppress all evidence obtained in connection with the unlawful search of Mr. Smith's person and the unlawful seizure of his cell phones on June 13, 2024, and the tainted fruits thereof.

1

This motion is based on the accompanying memorandum of points and authorities, the record and all files in this case, and such other evidence and argument as may be presented at the hearing on this matter.

Dated: March 9, 2026                    Respectfully submitted,

                                        */s/ Karen M. Sosa*
                                        Mark J. Werksman
                                        Karen M. Sosa
                                        Attorneys for Reece Smith

2

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Reece Smith respectfully moves the Court to suppress all evidence obtained in connection with the unlawful search of Mr. Smith's person, the unlawful seizure of his cell phones, and the tainted fruits thereof.

### I.   INTRODUCTION

On June 13, 2024, law enforcement officers seized two cell phones from Mr. Smith's person without a warrant and without any applicable exception to the warrant requirement. The Department of Homeland Security retained those phones for 43 days before seeking judicial authorization to search them. The warrant they ultimately obtained was built on the fruits of the initial unlawful seizure, insufficient probable cause, and on a materially inconsistent explanation of how the phones were obtained. All evidence derived therefrom must be suppressed.

### II.   STATEMENT OF FACTS

#### A. The Storage Unit Search Warrants

On June 12, 2024, Department of Homeland Security Special Agent Gangwish obtained a series of search warrants for, among other locations and persons, Storage Units 111 and 420 at the Trojan Storage facility in Burbank ("the Storage Unit Warrants"). Exhibits A, B. In addition to these two warrants, Agent Gangwish simultaneously obtained seven other identical warrants to search the persons of four named co-conspirators, the residences of these four co-conspirators ("Subject Premises 1" and "Subject Premises 2"), and the vehicle of one of these co-conspirators ("Subject Vehicle"). See Exhibit A, p. 13. Agent Gangwish did not obtain any warrants specific to Mr. Smith. None of the warrants obtained on June 12 authorized the search of Mr. Smith's person, his vehicle, his residence, or any of his digital devices.

The Storage Unit Warrants authorized the search and seizure of digital devices found inside Units 111 and 420. They did not authorize the seizure or search of digital devices found anywhere else at the Trojan Storage facility.

**B. Execution of the Storage Unit Warrants and Seizure of Smith's Phones**

The Storage Unit Warrants were executed on June 13, 2024. Exhibit C. Three special agents, five task force officers ("TFO") from the Los Angeles County Sheriff's Department ("LASD"), and one Customs and Border Patrol K9 handler participated in the operation. Id., p. 2. While the search was underway, Mr. Smith drove up to the gate of the storage facility. Id., p. 3. TFO Ruiz and TFO Bowers directed him to leave, but he wanted to stay. Id. They directed Mr. Smith to park his vehicle and exit the car. Id.

When Mr. Smith got out of the vehicle, TFO Bowers observed a pocketknife on his person. Id. The officers handcuffed Mr. Smith and conducted a pat-down search for weapons. Id. At this point, the Government's records are materially inconsistent as to what occurred next. Agent Gangwish's Report of Investigation states that the pat-down occurred without incident, and the deputies asked Mr. Smith to sit on the tailgate of their truck. Id. They asked him if he had any cell phones, "in which he stated he had two on his persons and gave both phones to TFO Ruiz." Id. That is the extent of the detail provided in the report. Notably, the report does not state that Mr. Smith consented to his cellphones being *seized*. Mr. Smith did not consent to his cellphones being seized or searched. The report inaccurately states, "During the execution of the search warrant numerous items were seized as evidence from Unit 111. These items include but are not limited to: [. . .] Blue iPhone with two cameras; Black iPhone (IMEI 352377632960346)". Id., p.4. These phones were not, in fact, seized from Unit 111.

On July 26, 2024, Agent Gangwish submitted an affidavit in support of a search warrant to search the contents of the devices ("the July 26 Warrant"). Exhibit D. In that sworn affidavit, he tells a materially different story: "During a pat down of Smith's person, agents found the Subject Devices on Smith's person." Id., p. 15.

4

The Trojan Storage facility was equipped with surveillance cameras. Agent Gangwish was well aware of this; footage that he obtained from those cameras formed a significant part of the foundation for the June 12 warrants. Yet Agent Gangwish decided not to obtain the footage of the execution of the Storage Unit Warrants and the warrantless search and seizure of Mr. Smith and his property. When Mr. Smith inquired about the preservation of that video, Agent Gangwish responded, "Trojan Storage video footage lasts approximately 90 days and we did not pull the video for June 13th." Declaration of Karen M. Sosa. Furthermore, despite the presence of nine officers at the scene, not one has any video footage of the search or the encounter with Mr. Smith. Again, from Agent Gangwish: "I just confirmed that neither TFO Jose Ruiz nor TFO Bowers were wearing body cams on June 13th, and neither have any separate video footage from that day. Furthermore, no other officers have additional video from June 13th." Id.

As a result, the only record of what occurred during the seizure of Mr. Smith's cell phones consists of the Report on Investigation and Agent Gangwish's sworn affidavit – two documents that contradict one another on the central question of on what grounds law enforcement seized his cell phones.

### C. Subsequent Search Warrant for the Cell Phones

Agents retained possession of Mr. Smith's cell phones following the June 13th encounter. No warrant to search the phones was sought at that time.[1] The phones remained in Government custody for approximately six weeks. On July 26, 2024, Agent Gangwish obtained the July 26 Warrant to search the contents of the two devices. The affidavit submitted in support of the July 26 Warrant relies in part on the circumstances of the June 13 seizure. As set forth below, because that initial

---

[1] By contrast, Agent Gangwish did seek a search warrant for six watches found inside the storage units. That additional warrant application was submitted on the day the items were found, June 13, 2024.

5

seizure was unlawful, the July 26 Warrant and the search conducted pursuant to it are likewise unconstitutional, and the resulting fruit must be suppressed.

## III.    ARGUMENT

### A. The June 13 Warrantless Search and Seizure of Mr. Smith and His Property Violated the Fourth Amendment

The Fourth Amendment's "basic rule" is that "[A] seizure of personal property [is] per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant." United States v. Place, 462 U.S. 696, 701 (1983). Where the Government seizes property without a warrant, the burden falls on the Government to demonstrate that the seizure falls within a recognized exception to the warrant requirement. United States v. Carbajal, 956 F.2d 924 (9th Cir. 1992). Here, the Government cannot meet that burden. The seizure of Mr. Smith's cell phones on June 13, 2024, was warrantless, and no exception applies.

### 1.    The Storage Unit Warrants Did Not Authorize the Seizure of Mr. Smith's Phones

The Storage Unit Warrants expressly identify the "Premises to be Searched" as Trojan Storage Units 111 and 420. They authorized the seizure and search of any digital devices found *inside* the storage units. They did not authorize the search of the entire premises at Trojan Storage. Furthermore, none of the June 12 warrants authorized the search of Mr. Smith or his property. This omission was not inadvertent. Agent Gangwish obtained nine warrants on June 12, and his affidavit names Mr. Smith as a suspected co-conspirator. Nevertheless, Mr. Smith was expressly excluded from the co-conspirators whose persons and property could be searched, and none of the June 12 warrants authorized the search of his person, his vehicle, his residence, or any digital devices in his possession.

The Government's own records regarding the execution of the warrants belie their belief that the Storage Unit Warrants did not cover the phones. In his July 26

6

affidavit, Agent Gangwish stated: "[T]he June warrants authorized law enforcement to seize, among other things, any digital devices found inside Storage Units 111 and 420." Exhibit D, p. 14. On the custody receipt for detained property, under Reason for Detention, Special Agent Doino wrote, "search warrant application," an acknowledgment that they were not seized pursuant to any then-existing warrant. Exhibit E.

### 2. No Exception to the Warrant Requirement Justified the Seizure

Warrantless seizures are per se unreasonable unless the Government demonstrates that one of the "few specifically established and well delineated exceptions" to the warrant requirement applies. Katz v. United States, 389 U.S. 347, 357 (1967). No exception applies here.

### a. The Pat-Down Exception Does Not Apply

A weapons pat-down is a strictly limited intrusion to ensure officer safety. It permits an officer to conduct a brief, surface pat-down to detect weapons when the officer has reasonable, articulable suspicion that the subject is armed and dangerous. Terry v. Ohio, 392 U.S. 1 (1968). It does not authorize the seizure of non-weapon items discovered during the frisk.

The Supreme Court made this unambiguous in Minnesota v. Dickerson, 508 U.S. 366 (1993). Under Dickerson's "plain feel" doctrine, an officer conducting a lawful pat-down may seize an item only if its incriminating character is immediately apparent through touch, and even then, only if the officer stays within the bounds of a weapons search. The Court observed, "Here, the officer's continued exploration of respondent's pocket after having concluded that it contained no weapon was unrelated to the sole justification of the search under Terry: the protection of the police officer and others nearby. It therefore amounted to the sort of evidentiary search that Terry expressly refused to authorize, and that we have

condemned in subsequent cases." Id. at 378 (cleaned up). If an officer conducts a pat-down and determines that an item is not contraband, the inquiry ends.

According to Agent Gangwish's sworn affidavit account, agents found the phones during the pat-down. But the pat-down exception cannot justify what happened here. A cell phone does not feel like a weapon. It has no incriminating character, certainly not one that is immediately apparent through touch. The moment agents determined that the objects they felt were cell phones and not weapons, Dickerson required them to stop. Instead, they seized the cell phones entirely and retained them without a warrant for 43 days. That is expressly prohibited by Dickerson.

### b. Consent is Not Established by the Record

The Government may attempt to justify the seizure of the phones on the grounds that Mr. Smith voluntarily surrendered his phones. He did not, and the record does not support that conclusion. "The existence of consent to a search is not lightly to be inferred, and the government always bears the burden of proof to establish the existence of effective consent." United States v. Shaibu, 920 F.2d 1423, 1426 (9th Cir. 1990).

The Report of Investigation states that after the pat-down, deputies asked Mr. Smith whether he had any phones and that he "stated he had two on his person and gave both phones to TFO Ruiz." This sparse account is the entirety of the Government's contemporaneous documentation of the alleged consensual transfer. It does not state that Mr. Smith was informed he had the right to refuse. It does not state that he was told the phones would be retained indefinitely. Consent can be limited; a suspect may consent to a search of some duration or of some part of a property or device, and the ensuing search is only legal within that limitation. If Mr. Smith did hand deputies his phones, for example, for them to see that they were just phones and nothing nefarious, that would not be valid consent for the indefinite detention of the devices. Here, the record does not establish that Mr.

8

Smith consented to the phones being seized or retained, and indeed it is not credible that Mr. Smith voluntarily handed over his cell phones for law enforcement to keep.

The consent theory is further undermined by Agent Gangwish's own sworn affidavit submitted in support of the July 26 Warrant. In that affidavit, Agent Gangwish does not describe a consensual transfer at all. He states that, "During a pat down of Smith's person, agents found the Subject Devices on Smith's person." This is not consent, this is a search. Where the Government's own records contradict each other on whether consent was given, they cannot meet their burden to establish that valid consent existed.

## B. The Cell Phones Were Impermissibly Detained Pending a Warrant

Where probable cause exists to believe that an item may contain evidence of a crime, "the Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it." United States v. Place, 462 U.S. 696, 701 (1983). Where law enforcement has only reasonable suspicion regarding the property to be seized, the Court must weigh the nature and extent of the intrusion on the individual's Fourth Amendment interests against the governmental interests alleged to justify it. Id. at 703; Terry v. Ohio, 392 U.S. 1 (1968). For such a warrantless detention of personal property to be permissible, it must be "brief," "properly limited in scope," and "so minimally intrusive of Fourth Amendment interests that strong countervailing governmental interests will justify a seizure based only on specific articulable facts that the property contains contraband or evidence of a crime." Place, 462 U.S. at 706.

In Place, the Supreme Court held that the 90-minute detention of luggage while agents waited for a narcotics dog exceeded the permissible limits of a Terry-type investigative stop. Id. at 709-710. The Court observed, "the brevity of the

9

invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion." Id. at 709. The duration of that detention alone was sufficient to render it unreasonable. Ibid.

The detention here was not 90 minutes whilst investigators contacted a magistrate to secure a warrant for the seized phones. This warrantless detention of the phones lasted 43 days. Mr. Smith's phones were seized from his person on June 13, and a warrant to search them was not even sought until July 26. If 90 minutes was too long a detention in Place, it is plain that the 43-day warrantless detention here was unreasonable.

Moreover, the record offers no justification for the delay. Agent Gangwish's affidavit in support of the July 26 Warrant sheds no light on why it took six weeks to seek authorization to search the phones. There is no suggestion that there was any particular obstacle to a diligent and timely warrant application. The Government simply held Mr. Smith's phones for 43 days without a warrant and without an explanation.

Importantly, the Place Court drew a distinction between a detention in order to investigate and a detention in order to search the property. If the purpose of detaining the property is to subject it to a search that requires a warrant, "the initial seizure . . . no matter how brief – could not be justified on less than probable cause." Id. at 706. The inference the Court drew in Place applies with full force here. When agents are aware of a subject in advance, as Agent Gangwish was, having named Mr. Smith as an alleged co-conspirator in his affidavit, and have ample opportunity to apply for a search warrant ahead of the seizure, as Agent Gangwish did, an extended warrantless detention of personal property cannot be attributed to the exigencies of the moment. It reflects an attempt to operate outside the warrant requirement. The 43-day warrantless detention of Mr. Smith's phones was unreasonable under the Fourth Amendment, and the fruits of the July 26

10

Warrant must be suppressed on this basis independently of the unlawfulness of the initial seizure.

### C. All Evidence Obtained Pursuant to the July 26 Warrant Must Be Suppressed

#### 1. The July 26 Warrant is Fruit of the Poisonous Tree

Evidence obtained as a direct result of a Fourth Amendment violation must be suppressed as fruit of the poisonous tree. Wong Sun v. United States, 371 U.S. 471 (1963). The exclusionary rule reaches not only the direct objects of an unlawful search or seizure, but all evidence discovered through the exploitation of that illegality. The taint extends until the link between the constitutional violation and the evidence has "become so attenuated as to dissipate the taint." Id. at 487. There is no attenuation here.

The July 26 Warrant would not exist but for the unlawful seizure of Mr. Smith's phones on June 13. The July 26 Warrant was obtained for the express purpose of searching the phones after they were seized without a warrant. That seizure allowed law enforcement to name the specific devices to be searched. That seizure also allowed law enforcement to connect the devices to Mr. Smith. In his July 26 affidavit, Agent Gangwish refers to the Telegram notifications that TFOs Ruiz and Bowers observed only because they had unlawfully seized the phones from Mr. Smith's person. The lock screen was only visible to them because they had taken the phones from Mr. Smith and, despite the phones obviously not being weapons, were holding them. Had the phones been immediately handed back to Mr. Smith as they should have been, the notifications would not have been seen. The July 26 Warrant is the direct result of the illegal seizure on June 13, and the Fourth Amendment requires suppression of everything that followed.

#### 2. The July 26 Warrant is Not Supported by Probable Cause

The Supreme Court has recognized that cell phones occupy a unique position in Fourth Amendment jurisprudence. Modern cell phones are not just an

11

accessory or office tool. They are "minicomputers" and "could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers." Riley v. California, 573 U.S. 373, 393-394 (2014). In the 12 years since Riley, phones have also become our wallets, health records, financial records, home security controls, password storage, personal identification, and our personal assistants. It is all the more true that they contain "the privacies of life." Id. at 403.

Probable cause for the issuance of a warrant requires a "particularized suspicion," (Texas v. Brown, 460 U.S. 730, 742 (1983)); thus, an affidavit of probable cause must set forth facts, not simply conclusions or suspicions, that connect the property to be searched to the suspected crime. Further, "[t]he scope of the warrant, and the search, is limited by the extent of the probable cause." In re Grand Jury Subpoenas, 926 F.2d 847, 857 (9th Cir. 1991), noting United States v. Whitney, 633 F.2d 902, 907 (9th Cir. 1980) ["The command to search can never include more than is covered by the showing of probable cause to search."].) Thus, "probable cause must exist to seize all the items of a particular type described in the warrant." Id. "[T]his requirement prevents a general, exploratory rummaging in a person's belongings." Id. "Courts have repeatedly invalidated warrants authorizing a search which exceeded the scope of the probable cause shown in the affidavit." In re Grand Jury Subpoenas, *supra*, 926 F.2d at 857.

These requirements are particularly imperative when the Government is seeking access to a defendant's computer or cell phone. As one court explains:

> Where, as here, the property to be searched is a computer hard drive, the particularity requirement assumes even greater importance. As numerous courts and commentators have observed, advances in technology and the centrality of computers in the lives of average people have rendered the computer hard drive akin to a residence in terms of the scope and quantity of private information it may contain (citations omitted). The potential for privacy violations occasioned by an unbridled, exploratory search of a hard drive is enormous. This threat is compounded by the nature of digital storage. Where a warrant

12

> authorizes the search of a residence, the physical dimensions of the evidence sought will naturally impose limitations on where an officer may pry: an officer could not properly look for a stolen flat-screen television by rummaging through the suspect's medicine cabinet, nor search for false tax documents by viewing the suspect's home video collection. Such limitations are largely absent in the digital realm, where the size or other outwardly visible characteristics of a file may disclose nothing about its content.

United States v. Galpin 720 F.3d 436, 446-447 (2d Cir. 2013).

Agent Gangwish's affidavit accompanying the July 26 Warrant application contains almost no new facts beyond what he already possessed on June 12. It is worth remembering that on June 12, when he obtained nine search warrants, including four for the persons and devices of other co-conspirators, he did not apply for one for Mr. Smith's devices. The only new information relating to the phones that was not available on June 12 is that Mr. Smith received a Telegram message, the sender and contents of which were unknown.

Telegram is a messaging application with approximately one billion users worldwide, putting it on par with Facebook Messenger.[2] The mere presence of a Telegram notification is not remotely probative of criminal activity. Agent Gangwish's affidavit offers nothing beyond the bare assertion that drug traffickers use Telegram, a generalization that applies with equal force to any widely used communications platform, including email, text messaging, and phone. Tellingly, the affidavit includes not one fact that any Telegram communication was connected to the suspected criminal conduct in this case. Probable cause requires a "fair probability" based on specific, articulable facts, not generalized suspicion derived from the mere use of a popular application. Illinois v. Gates, 462 U.S. 213,

---

[2] We Are Social, DataReportal & Meltwater, *Most Popular Social Networks Worldwide as of February 2025, by Number of Monthly Active Users*, Statista (Oct. 15, 2025), https://www.statista.com/statistics/272014/global-social-networks-ranked-by-number-of-users/ (last visited Mar. 9, 2026).

13

238 (1983). A lock screen notification, divorced from any facts about its content or connection to the criminal activity under investigation, does not move the needle.

The July 26 affidavit has minimal facts connecting either of these two devices to the alleged criminal activity. It also does not contain facts supporting the search of each data type sought in the warrant, for example bank records, all call logs, social media content, or GPS coordinates identifying all locations Mr. Smith visited. The affidavit is woefully insufficient to meet the standard of particularized probable cause required for such an expansive exploration of Mr. Smith's personal cellular devices.

### 3. The July 26 Affidavit May Contain Material Misrepresentations Warranting Suppression

The July 26 Warrant is also independently defective if the affidavit supporting it contains a material misrepresentation about how the phones were obtained. The Government must decide which version of events was correct; if they assert that Agent Gangwish's report is accurate and that Mr. Smith consensually handed the phones over to officers, then Agent Gangwish's affidavit for the July 26 Warrant was materially false.

Under Franks v. Delaware, 438 U.S. 154 (1978), a warrant must be voided and the fruits of the search suppressed if the defendant establishes by a preponderance of the evidence that the affiant made a false statement, or made a statement with reckless disregard for the truth, and that statement was material to the finding of probable cause. Id. at 155-156.

The conflicting stories in the Report of Investigation and in the sworn July 26 affidavit have already been detailed here. Agent Gangwish authored both documents. This is not the typical Franks scenario in which a defendant's account contradicts the agent's. Here, the contradiction is entirely within the Government's own account of events. Agent Gangwish cannot claim ignorance of the inconsistency as he authored both. If the Report, which was written nearer the time

14

of the events, is accurate, then the affidavit's account of the seizure was either deliberately false or written with reckless disregard for the truth of what the report recorded.

The misrepresentation is material. The way the phones were obtained bears directly on whether their seizure was lawful – which in turn bears directly on whether the Telegram notification can properly form the basis for a warrant. Furthermore, "the defendant willingly turned over his devices" sounds less incriminating than officers uncovering the phones during a search. A magistrate presented with an accurate account of the circumstances – including the contradiction between the report and the affidavit and the lack of any warrant authorizing the seizure – may well have declined to issue the July 26 Warrant. Where a material misrepresentation infects the affidavit, the warrant falls and suppression follows. Franks, 438 U.S. at 156.

## IV.   CONCLUSION

The search of Mr. Smith's person and seizure of his cell phones on June 13, 2024, occurred without a valid warrant. No exception applied to permit the warrantless seizure. Law enforcement kept his phones for an unreasonable 43 days without seeking a warrant to search them. The July 26 Warrant and all evidence obtained pursuant to it is fruit of this poisonous tree. Therefore, Mr. Smith respectfully requests that this Court suppress the evidence collected during the unlawful search of his cell phones.

Dated: March 9, 2026,                          Respectfully submitted,

                                               /s/ Karen M. Sosa
                                               Mark J. Werksman
                                               Karen M. Sosa
                                               *Attorneys for Reece Smith*

15